## CASE NO. 16-24135-CIV-ALTONAGA/O'Sullivan

# IN THE U.S. DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**GILBERT & CADDY PA N/K/A GILBERT LAW GROUP PA**
*Appellant/Creditor,*

v.

**NELSON CABRERA**
*Appellee/Debtor*

This is an appeal from two (2) Orders from the
United States Bankruptcy Court
Southern District Of Florida
Bankruptcy Case No. 15-29656-AJC

## APPELLANT'S BRIEF

*Randall L. Gilbert*
*Bryce Gilbert*
Attorneys for Appellant

**Gilbert Law Group, P.A.**
1720 Harrison Street
19th Floor, Penthouse B
Hollywood, Florida 33020
Telephone: (954) 620-5000
RGilbert@TheConstructionLawyers.com
BGilbert@TheConstructionLawyers.com

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

TABLE OF AUTHORITIES     3

PREFACE     5

JURISDICTIONAL STATEMENT     5

STATEMENT OF THE ISSUE     5

STANDARD OF REVIEW     6

STATEMENT OF THE CASE     7

SUMMARY OF ARGUMENT     15

ARGUMENT     17

**I.**     **CREDITOR IS ENTITLED TO ITS DEFAULT REMEDY PURSUANT TO PARAGRAPH (C) OF THE SETTLEMENT AGREEMENT [R. 9-3 Pg. 4] IN STRICT ACCORDANCE WITH THE PLAIN, CONSPICUOUS, AND UNAMBIGUOUS SETTLEMENT TERMS WHICH MADE "*TIME [FOR PAYMENT] ABSOLUTELY AND STRICTLY OF THE ESSENCE,*" AND CREDITOR'S RECEIPT OF DEBTOR'S LATE OCTOBER PAYMENT BY WIRE, WITHOUT DEBTOR MAKING ANY MENTION THAT RETENTION WOULD CONSTITUTE A WAIVER OF DEBTOR'S DEFAULT UNTIL THE DAY OF THE EVIDENTIARY HEARING, DOES NOT EVINCE THE REQUISITE FINDING OF A "CLEAR CASE" THAT CREDITOR INTENDED TO WAIVE ITS RIGHT TO THE DEFAULT REMEDY; ESPECIALLY IN LIGHT OF THE BANKRUPTCY COURT'S FINDING THAT DEBTOR RECEIVED ONE PRIOR "ACCOMMODATION [FROM CREDITOR] BUT WARNED THAT FUTURE LATE PAYMENTS WOULD NOT BE TOLERATED." [R. 9-4 Pg. 112]**

CONCLUSION     30

CERTIFICATE OF COMPLIANCE     31

CERTIFICATE OF SERVICE     31

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Pages**

<u>Andersen Windows, Inc. v. Hochberg,</u>
997 So. 2d 1212 (Fla. 3rd DCA 2008)                                            **19**

<u>Andrews Roofing, LLC v. Cabrera,</u>
116 So. 3d 388 (Fla. 3d DCA 2013)                                              **7**

<u>BAC Int'l Credit Corp. v. Macia,</u>
626 So. 2d 1037 (Fla. 3rd DCA 1993)                                            **19**

<u>Bristol W. Ins. Co. v. Albertson,</u>
41 So. 3d 378 (Fla. 4th DCA 2010)                                              **27**

<u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.,</u>
420 F.3d 1146 (11th Cir. 2005)                                                 **17**

<u>Gilman v. Butzloff,</u>
22 So. 2d 263 (Fla. 1945)                                                      **6,23,24**

<u>Gomes v. Boatarama, Inc.,</u>
963 So. 2d 869 (Fla. 3rd DCA 2007)                                             **19**

<u>Gus' Baths v. Lightbown,</u>
133 So. 85 (Fla. 1931).                                                        **25**

<u>Hufcor/Gulfstream, Inc. v. Homestead Concrete & Drainage, Inc.,</u>
831 So. 2d 767 (Fla. 4th DCA 2002)                                             **19,21,28**

<u>In re Jones,</u> 06-80150-JAC-13, 2007 WL 1725593, (Bankr. N.D. Ala. 2007)
*subsequently aff'd,* 279 Fed. Appx. 825 (11th Cir. 2008)                      **18**

<u>In re Gande Rests., Inc.,</u>
162 B.R. 345 (Bankr. M.D. Fla. 1993)                                           **6,23**

<u>In re Verola,</u>
336 B.R. 547 (S.D.Fla.2004)                                                    **6**

<u>Kelly Tractor Co. v. R.J. Canfield Contracting, Inc</u>
579 So.2d 261 (Fla. 4th DCA 1991),
*review denied* 591 So.2d 183 (Fla.1991)                                       **23-24**

<u>LRB Holding Corp. v. Bank of Am., N.A.,</u>
944 So. 2d 1113 (Fla. 3rd DCA 2006                                             **19,25**

Meeks v. State Farm Mut. Auto. Ins. Co.,
460 F.2d 776 (5th Cir.1972)                                      **27**

Mixson v. Allstate Ins., Co.,
388 So. 2d 608 (Fla. 3rd DCA 1980)                              **26,27,28**

Pajcic v. Am. Gen. Life Ins. Co.,
419 F.Supp.2d 1380 (M.D.Fla.2006)                               **6,27,28**

Progressive Exp. Ins. Co. v. Camillo,
80 So. 3d 394 (Fla. 4th DCA)                                     **27**

Raymond James Fin. Servs., Inc. v. Saldukas,
896 So.2d 707 (Fla.2005)                                        **23**

Royal Caribbean Cruises, Ltd. v. Clarke,
148 So. 3d 155 (Fla. 3d DCA 2014)                               **19**

State v. Thomas Davis,
834 So.2d 898 (Fla. 3rd DCA 2002).                              **25**

Stewart Title Guar. Co. v. Roberts-Dude,
497 B.R. 143 (S.D. Fla. 2013)                                   **6**

Sublime, Inc. v. Boardman's Inc.,
849 So.2d 470 (Fla. 4th DCA 2003).                              **17,28,29**

Travelers Indemnity Co. v. Mirlenbrink,
345 So.2d 417 (Fla. 2d DCA 1977)                                **27,28**

Treasure Coast, Inc. v. Ludlum Const. Co.,
760 So. 2d 232 (Fla. 4th DCA 2000)                              **21,22,29**

United States v. Eggersdorf,
126 F.3d 1318 (11th Cir.1997)                                   **22**

Walker v. Ford Motor Credit Co.,
484 So. 2d 61 (Fla. 1st DCA 1986)                               **223**

WJA Realty Ltd. P'ship v. Employee Benefit Claims, Inc.,
488 So.2d 121 (Fla. 3rd DCA 1986)                              **27**

DEFAULT, Black's Law Dictionary (10th ed. 2014)                 **20**

Fla. Stat. §673.3111                                            **23**
Fla. Stat. §83.202                                              **29**
Barakat v. Broward County Hous. Auth., 771 So. 2d 1193 (Fla. 4th DCA 2000).  **20**

## PREFACE

Appellant/Creditor will be referred to as Creditor.  Appellee/Debtor will be referred to as Debtor.

Citations to the Record will be to the Document, then the Page, and then the numbered paragraph

if applicable (e.g. [R. 9-3 Pg. 133]

## JURISDICTIONAL STATEMENT

Appellant/Creditor appeals to the United States District Court pursuant to 28 U.S.C. §

158(a), Federal Rules of Bankruptcy Procedure 8001 and 8002, and Local Rule 8002-1, the "Order

Sustaining Debtor's Objection To Claim [1-2]" ("Order 1") [R. 9-4 Pg. 87-95] entered on April

29, 2016, and the "Order Granting In Part Motion For Reconsideration To Alter And Correct Order

Sustaining Objection To Claim [1-2]" ("Order 2") [R. 9-4 Pg. 111-114] entered on September 20,

2016. The Notice of Appeal was timely filed on September 26, 2016 [R. 9-4 115-129].  This appeal

is from orders which are final and which reduced Claimant's claim to $29,600.00, [R. 9-4 Pg. 113]

instead of the $72,006.05 default amount, less $10,400.00 in payments made by the debtor, plus

18.00% interest since May 5, 2014, plus attorney fees, all pursuant to Paragraph C of the parties

Settlement Agreement [R. 9-8, R. 9-2 Pg. 8-68].[1]

## STATEMENT OF THE ISSUE

Whether the bankruptcy judge erred in determining that Creditor waived its rights to pursue

Creditor's default remedy under Paragraph (C) of the pre-bankruptcy petition Settlement

Agreement, when Creditor retained Debtor's October 22, 2015, eight hundred dollar ($800.00)

late wire payment (which was paid by Debtor without any restrictive endorsement, conditions, or

statements), while simultaneously finding that: "In fact, the February email, sent by Creditor in

response to Debtor's request to pay the February payment late, stated it was making the

---

[1] The amounts therein state Debtor is entitled to a $10,300.00 credit, but it is undisputed Debtor is entitled to a $10,400.00 credit See, [R. 9-3 Pg. 1-2, ¶5, ¶7].

accommodation but warned that future late payments would not be tolerated. In October 2015, Debtor did not request or receive permission to make the October payment late." [R. 9-42 Pg. 112].

## STANDARD OF REVIEW

Generally, under Florida law, "the existence or absence of waiver is a question of fact ... [h]owever, if based on the facts surrounding a claimed waiver, a reasonable person could draw only one conclusion from those circumstances, then the existence or absence of waiver is a question of law for the Court." Pajcic v. Am. Gen. Life Ins. Co., 419 F. Supp. 2d 1380, 1383 (M.D. Fla. 2006). Although the standard of review for the bankruptcy court's findings of fact is *clearly erroneous*; both the bankruptcy court's legal conclusions, and mixed questions of law and facts are reviewed *de novo*. Stewart Title Guar. Co. v. Roberts-Dude, 497 B.R. 143, 149 (S.D. Fla. 2013). Where [p]rior to the presentation of evidence [before the bankruptcy court], the parties filed a Joint Stipulation [R. 9-3 Pg. 1-70, 9-4 Pg 1-86] which included exhibits requiring no additional proof," and only the court's application of the doctrine of waiver is at issue, the Court should apply *de novo* review. [R. 9-4 Pg. 87, and 9-4 Pg. 112]. See, Stewart Title Guar. Co. v. Roberts-Dude, 497 B.R. 143, 149 (S.D. Fla. 2013) (*citing* In re Verola, 336 B.R. 547, 549 (S.D.Fla.2004) ("In this case, the facts are undisputed. The issues presented in this appeal concern the proper application of legal principles to those facts. Accordingly, the proper standard of review is *de novo*."). Additionally, the standard "*[w]*here waiver is sought to be established by conduct, the acts, conduct or circumstances relied upon to show waiver must make out a **clear case**." E.g. In re Gande Rests., Inc., 162 B.R. 345 (Bankr. M.D. Fla. 1993)*, citing,* Gilman v. Butzloff, 22 So.2d 263, 265 (1945).

## STATEMENT OF THE CASE

Appellant/Creditor defended debtor in a roofing case at the trial level and appellate level in Andrews Roofing, LLC v. Cabrera, 116 So. 3d 388 (Fla. 3d DCA 2013) in which Debtor prevailed at both levels, but which left Debtor with a legal bill still owing Creditor [R. 10 Pg. 17 ln. 19-25]. Creditor generally agrees with the bankruptcy court's Order granting and denying in part Creditor's motion for reconsideration which stated that, "[t]he facts are not in dispute." [R. 9-4 Pg. 112]. In fact, the original "Order Sustaining Debtor's Objection to Claim 1-2" [R. 94 Pg. 87-95, R. 9-8], almost verbatim adopted the parties' Joint Stipulation [R. 9-3 Pg 1-70 & R. 9-4 Pg. 1-86], which provides factual background and procedural history and context. A transcript of the hearing is available and part of the appellate record, however no testimony was taken, only argument from counsel [R. 10].

The Order Sustaining Objection to Claim [R. 94 Pg. 87-95, R. 9-8] stated that, "[p]rior to the presentation of evidence the parties filed a Joint Stipulation [ECF #53 [[R. 9-3 Pg 1-70 & R. 9-4 Pg. 1-86]] ] which included [eight (8)] exhibits requiring no additional proof" [R. 9-4 Pg. 87], and then proceeded to enumerate the following facts:[2]

1.      "Creditor, Gilbert & Caddy, PA, is a Florida law firm." [R. 9-4 Pg. 87].

2.      "On June 25, 2014, Creditor sued both Debtor and Jennifer Cabrera in Broward County's 17th Judicial Circuit Case No. CACE 14-012231 relating to a dispute regarding alleged unpaid attorneys fees and costs." [R. 9-4 Pg. 88].

---

[2]  Statements made in brackets are supplemented by Creditor.  With regards to the exhibits, references to the record for where to find the eight (8) exhibits within the Joint Stipulation are separately cited to below as well.

3.      "On September 22, 2014, Creditor, Debtor, and Jennifer Cabrera all signed a Joint Stipulation for Settlement, (hereinafter "Settlement") as it relates to the state court matter." [R. 9-4 Pg. 88], [R. 9-3 Pg. 4-7].

4.      "The civil action was thereafter dismissed pursuant to the Settlement and 'Agreed Order of Dismissal and Reserving Jurisdiction to Enforce Settlement', [R. 9-3 Pg. 8], which was an attachment to the Settlement.  The Agreed Order of Dismissal and Reserving Jurisdiction to Enforce Settlement was executed by the Circuit Court and adopts the Joint Stipulation of Settlement as an Order of the Circuit Court." [R. 9-4 Pg. 88].

5.      "After the Settlement was entered, Debtor made thirteen (13) eight hundred dollar ($800.00) payments to Creditor for a total of ten thousand four hundred dollars ($10,400.00)." [R. 9-4 Pg. 88], [R. 9-3 Pg. 9-21].

6.      "After the Settlement was entered, Creditor sent notices to Debtor and Jennifer Cabrera." [R. 9-4 Pg. 88], [R. 9-3 Pg. 22-58].

7.      "The following summary of payments made by Debtor and Jennifer Cabrera to Creditor is accurate:

| PAYMENT DUE | DEFAULT NOTICE | RECEIPT OF PAYMENT | PAYMENT MADE | PAYMENT MADE AFTER NOTICE |
|---|---|---|---|---|
| 1. Oct. 15, 2014 | - | Oct. 14, 2014 | $800.00 | 0 days |
| 2. Nov. 15, 2014 | - | Nov. 14, 2014 | $800.00 | 0 days |
| 3. Dec. 15, 2014 | - | Dec. 15, 2014 | $800.00 | 0 days |
| 4. Jan. 15, 2015 | - | Jan. 15, 2015 | $800.00 | 0 days |
| **5. Feb. 15, 2015** | **Sun. Feb. 15, 2015** | **Wed. Feb. 18, 2015** | $800.00 | **3 days** |
| **6. Mar. 15, 2015** | **Tue. Mar. 17, 2015** | **Fri. Mar. 20, 2015** | $800.00 | **3 days** |
| 7. Apr. 15, 2015 | - | Apr. 15, 2015 | $800.00 | 0 days |
| 8. May 15, 2015 | - | May 15, 2015 | $800.00 | 0 days |
| **9. Jun. 15, 2015** | **Tue. Jun. 16, 2015** | **Fri. Jun. 19, 2015** | $800.00 | **3 days** |
| 10. Jul. 15, 2015 | - | Jul. 15, 2015 | $800.00 | 0 days |

| 11. Aug. 15, 2015 | Tue. Aug. 18, 2015 | Thur. Aug. 20, 2015 | $800.00 | 2 days |
|---|---|---|---|---|
| 12. Sept. 15, 2015 | - | Tue. Sept. 15, 2015 | $800.00 | 0 days |
| 13. Thur. Oct. 15, 2015 | Fri. Oct. 16, 2015 | Thur. Oct. 22, 2015 | $800.00 | 6 days |
| TOTAL | | | $10,400.00 | |

" [R. 9-4 Pg. 88-89].

8.      "Other than the above, no other payments were made to Creditor under the Settlement." [R. 9-4 Pg. 89]

9.      "On October 16, 2015, Creditor sent its notice of default by e-mail.  This was the only notice of default sent to the Debtor and Jennifer Cabrera relating to the October, 2015 payment. On October 22, 2015, payment was made by Debtor for $800.00, which was retained by Creditor." [R. 9-4 Pg. 89] , [R. 9-3 Pg. 60-61].

10.      "On October 23, 2015, Creditor filed its Motion to Enforce Settlement in the Broward Circuit Court against Debtor and Jennifer Cabrera [seeking to accelerate the balance due of $72,006.05 less payments made]." [R. 9-4 Pg. 89] , [R. 9-3 Pg. 62-70].

11.      "On November 5, 2015, Debtor filed his Petition for Bankruptcy" [R. 9-4 Pg. 89].

12.      "On November 6, 2015, Creditor filed its Proof of Claim [POC 1-2 [again seeking to accelerate the balance due of $72,006.05 less payments made]."  [9-8 Pg. 1-21], [R. 9-4 Pg. 89], [R. 9-8 Pg. 1-21].[3]

13.      "On December 22, 2015, Debtor filed his Objection to Claim  [ECF #25] [arguing that Creditor was merely entitled to the $29,600.00 settlement amount less payments made]." [9-2 Pg. 4-7], [R. 9-4 Pg. 89], [R. 9-4 Pg. 22-25].

---

[3] The Proof of claim is also found at R 9-4 Pg. 1-21 but for whatever reason the information is missing in the electronic fields when sent over and made into a Record on Appeal.  Therefore, please refer to the true Proof of Claim found at R 9-8.

14.     "On January 7, 2016, the Creditor filed its Notice of Contest to Debtor's Objection to Claim [ECF #33] [arguing that having failed to take advantage of the discount offered by making timely payments, Creditor was entitled to the default amount less payments made plus interest and attorney fees and costs under the Settlement Agreement]"  [9-2 Pg. 8-68], [R. 9-4 Pg. 89], [R. 9-4 Pg. 26-86].

15.     "The Court held a hearing on January 28, 2016 on the Debtor's objection to Claim [ECF #25 [[9-2 Pg. 4-7]] ] and the Creditor's Notice of Contest to Debtor's Objection to Claim [ECF #33 [[9-2 Pg. 8-68]] ].  The issue presented to the Court [and which is also the subject of this appeal] is … Whether by retaining the October 22, 2015 eight hundred dollar ($800.00) payment Creditor waived its rights to pursue the default remedy set forth under paragraph (C) of the Settlement" [R. 9-4 Pg. 89-90].

"The parties relied upon the following clauses within the Settlement:

A. NELSON CABRERA and JENNIFER CABRERA are jointly and severally responsible for paying a total of **$40,000.00** payable to the order of "GILBERT & CADDY PA" in clear funds. Each payment shall be timely delivered on or before the 15th of every month in the amount $800.00 each month starting October 15, 2014.

B. All payments hereunder, unequivocally must be timely delivered to GILBERT & CADDY, PA. (whose offices are physically located at 1720 Harrison Street, 19th Floor, Penthouse B, Hollywood, Florida 33020), for which **_TIME IS ABSOLUTELY AND STRICTLY OF THE ESSENCE_**. Payment must be delivered as provided in paragraph A, if any payment is due on a holiday, weekend, or other date mailing deliveries are not made, it is the responsibility of the payor to deliver payment prior that date. If payment is not received by the 15th of the month, Plaintiff shall provide notice of default via e-mail to email addresses jennifer.cabrera@planetbeach.com and ncabrera2000@att.net and via facsimile to 786-288-5745 and 305-668-7701. Thereafter, defendants shall have 5 calendar days after notice to cure default without penalty. Successful e-mail or facsimile on either defendant is sufficient notice on both. Should either defendant wish to change their e-mail address or facsimile number, said change must be made in writing via e-mail and certified mail to the Plaintiff's attorney.

C. After this Joint Stipulation for Settlement is finalized PLAINTIFF'S attorney shall submit to the Court a: (1) "Notice Of Voluntary Dismissal With Prejudice and Court Reserving Jurisdiction To Enforce Settlement" and (2) "Agreed Order of Dismissal and Reserving Jurisdiction to Enforce Settlement." DEFENDANTS failure to comply with Paragraph A or the failure of the payment funds clearing shall entitle PLAINTIFF to obtain a default judgment ex-parte, without hearing against DEFENDANTS, for the full amount as provided in the Complaint, which is $72,006.05 which continues to accrue interest at 18% per annum from May 5, 2014 plus attorneys' fees pursuant to the Contract (attached to the Complaint) which will be subject to reduction as reflected by any payments or partial payments made by DEFENDANTS.

D. Except as otherwise provided herein, each party shall bear their own attorneys' fees and costs.

E. It is Defendants' joint responsibility to insure that payment is timely delivered. Defendants assume the risk of payments not being timely delivered.

G. The undersigneds further declare, acknowledge, and represent that no promise, inducement or agreement not herein expressed has been made to the undersigned and that this release contains the entire agreement between the parties hereto and that the terms of this release are contractual and not a mere recital.

H. The Agreement shall be deemed as a joint work product of all Parties and their respective counsel, and all Parties shall be considered the drafters of this Agreement. Any rule of construction to the effect that any ambiguities are to be construed against the drafting party shall not be applicable in any interpretation of this Agreement.

J. The Parties expressly state that they have carefully read this Agreement, have discussed its terms with their respective counsel, fully understand the same, and sign the Agreement as their own free act and deed.

L. This writing contains the entire Agreement and understanding concerning its subject matter and the settlement between the Parties, and supersedes and replaces all prior negotiations and agreements between the Parties, or any of them, whether written or oral, regarding the subject matter contained herein. The terms of this Agreement are contractual and not a mere recital."

(all capitalizing, bolding, underlining, and italicizing emphasis are original.  All highlighting in yellow is not original).  [R. 9-4 PG. 90-91],

Additionally, the Settlement, which was only two (2) pages long (excluding exhibits which followed), contained a warning, immediately above debtor's signature, cautioning debtor to fully read and understand the terms before entering into the binding Settlement agreement.

**CAUTION: READ THE ABOVE BEFORE SIGNING BELOW. THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT, HAS BEEN ADVISED TO CONTACT AN ATTORNEY OR HAS KNOWINGLY AND VOLUNTARILY WAIVED THE OPTION TO DO SO.**

(emphasis original).  [R. 9-4 PG. 91].  As seen above from the highlights, the Settlement says in no less than five (5) places that payments must be timely paid and delivered [R. 10 Pg. 38 ln 7-11]. Debtor was represented by its current counsel in negotiating the Settlement with Creditor [R. 10 Pg. 39 ln 10-11].

Pursuant to paragraphs (A) and (B) of the Settlement, payments under the Settlement are due on the 15th, but in reality, Debtor's additional five (5) day grace period to pay is only triggered after Creditor first sends a notice of default.  In the beginning of the Order Sustaining Objection to Claim, the bankruptcy court agreed with Creditor, that the Debtor failed to make its payment within the allotted five (5) day grace period after receiving notice of default finding,

> "The Creditor contends the plain, conspicuous and unambiguous Settlement terms govern, and the Debtor is only entitled to the five (5) day grace period in which to cure. The Court is persuaded by the Creditor's argument. In this case, DEBTOR was deemed served on October 16, 2015.  Paragraph B of the Settlement gave Debtor a total of 'five (5) calendar days after notice' to cure. Debtor did not cure the default within five (5) days.  [R. 9-4 Pg. 92-93]

However, in the later part of the order, the bankruptcy court found that "[u]pon consideration of the record, and notwithstanding Debtor's failure to timely cure the default under the Settlement, the court finds creditor waived its right to enforce the default provision in the Settlement and collect the full amount provided for in the Complaint." [R. 9-4 Pg. 93.]  Although the bankruptcy court's order based its finding of waiver upon a set of facts, [R. 9-4 Pg. 93-95] they

should be ignored because following Creditor's motion for reconsideration [R. 9-4 Pg. 96-103] and supplement to that motion for reconsideration [R. 9-4 Pg. 104-105], the bankruptcy court entered an "Order Granting in Part Motion for Reconsideration to Alter and Correct Order Sustaining Objection to Claim [1-2]" [R. 9-4 Pg. 111-114], agreed that it erroneously misconstrued the exhibits and facts [R. 9-4 Pg. 111-112], made new findings which in its opinion constituted a waiver by Creditor, and ultimately reached the same conclusion finding:

> In support of its ruling, the Court erroneously relied on a February email when it stated in the Order that it was okay with Creditor to make the payment late. In fact, the February email, sent by Creditor in response to Debtor's request to pay the February payment late, stated it was making the accommodation but warned that future late payments would not be tolerated. In October 2015, Debtor did not request or receive permission to make the October payment late. In the Motion for Reconsideration, the Creditor argues that, because it never gave permission to make the payment late, and because it warned in its February email that future late payments would not be tolerated, it did not waive its right to claim the full amount requested in the Complaint, $72,006.05. The Creditor asserts that retention of this payment is insufficient to waive the Creditor's rights. However, the Court previously disagreed with Creditor; and, even without email supporting the notion that Creditor permitted the late payment, the Court believes the unconditional acceptance and retention of the payment prior to accelerating the debt is a waiver by the Creditor of its rights to move forward with acceleration.

[R. 9-4 112-113].

What the bankruptcy court was addressing, is that in Creditor's motion for reconsideration, Creditor pointed out that in February 2015, when the *February* payment was not timely paid, Creditor sent its 1st notice of default, and in response to a request from the Debtor to pay tomorrow, gave a one-time only accommodation; *but* warned Debtor – future late payments will not be tolerated stating, "Y*ou can make the payment tomorrow. * NOTE – this email shall not be construed as to create a course of conduct so as to permit or acquiesce to the waiver of future noncompliance.*" [R. 9-4 Pg. 47, 9-4 Pg. 96].

Although Debtor received notices of default after February, for which it was entitled pursuant to Paragraph (B) of the Settlement before payment was actually due, each time Debtor

paid within the five (5) day grace period allotted by Paragraph (B).  However, eight (8) months thereafter, in October 2015, when Debtor received a new notice of default due to the *October* payment not being timely paid by the fifteenth (15th), Debtor ignored Creditor's past February fair warning that future noncompliance would not be tolerated, and Debtor paid the October payment late anyway [R. 9-4 Pg. 96].  No advance and No subsequent permission was ever requested by Debtor, nor granted by Creditor to allow Debtor to pay the October payment late, and Creditor argued, *a fortiori* there can be no waiver [R. 9-4 Pg. 96].

In the supplement to the motion for reconsideration, Creditor further argued futility, stating that there simply would be no need for Creditor to return the $800.00 late payment, which Debtor's counsel conceded that Debtor himself *wired* directly into Creditor's account [R. 9-3 Pg. 9, R. 10 Pg. 11]], without restriction, without comment, without defense, and without reservation, only for Creditor to reclaim it later [R. 9-4 Pg. 104].  Regardless of who is right mathematically Creditor would be entitled to the $800.00.

Debtor's Scenario:      $800.00 is owed to pay down the $40,000.00
Creditor's Scenario: $800.00 is owed to pay down the $72,006.05.

The only question that the bankruptcy court should have been focused on should not have been whether there was a waiver.  Rather, the only question should have been under the plain reading of the terms of the Settlement Agreement, which the court found were "plain, conspicuous and unambiguous Settlement terms" [R. 9-4 Pg. 92-93] whether Debtor's $800.00 payment, which the bankruptcy court found was indeed paid late [R. 9-4 Pg. 92-93], should have been applied to pay down the: (1) $40,000.00 as Debtor contends; or (2) the $72,006.05 as Creditor contends, because no matter what it is undisputed that the $800.00 is owed, as re-affirmed by the Debtor's actual payment of the $800.00.

Debtor's wire instruction reveals that the $800.00 did not first pass through creditor's hands like a check would, but instead was unconditionally and directly deposited right into Creditor's bank account [R. 9-3 Pg. 9].  Furthermore, on December 22, 2015 Debtor filed its Objection to Creditor's Claim, making no mention that it intended to argue that Creditor's keeping of the $800.00 was a waiver of the right to enforce the default remedy within the Settlement agreement and should be returned [R. 9-2 Pg. 4-5].   The first time the waiver issue was raised was by the Debtor's attorney in legal argument at the January 28, 2016 hearing [R. 9-2 Pg. 69, R. 10 Pg. 13]. At the hearing, Debtor put on no testimony or evidence that Debtor ever requested the payment be returned, or otherwise conditioned Creditor's acceptance of the $800 payment upon a waiver of Debtor's default.

Notwithstanding, the bankruptcy court ruled that "Creditors who reject or return late payments, or who conditionally accept late payments, may proceed with default remedies. However, the Creditor herein having unconditionally accepted and retained the late payment, the Court believes the Creditor waived its right to pursue default remedies under the circumstances." [R. 9-4 Pg. 113].  The Court further determined that "Notwithstanding the Court's omission of citation to the emails, the Court still believes that the unconditional acceptance and retention of the October late payment constitutes a waiver of Creditor's right to claim the full amount of $72,006.05 due;  therefore, the Objection to Claim [ECF #25] is SUSTAINED and Claim #1 is reduced to reflect the amount owing under the Settlement as  29,600.00." [R. 9-4 Pg. 113].  This appeal timely followed [R. 9-4 Pg. 115-129].

## SUMMARY OF ARGUMENT

It is never the role of a trial court to rewrite a contract to make it more reasonable for one party.  Creditor is entitled to have its Settlement Agreement strictly enforced as written.  The

bankruptcy court agreed that the Settlement Agreement's terms were conspicuous and unambiguous.  The Settlement Agreement not only made time for payment of the essence five times (5x), but boldly, in caps, and italicize said it was "absolutely and strictly of the essence." Debtor's late October payment which it wired into Creditor's account without any comment or reservation of rights was late. An attempted performance in the form of a late payment does not cure the default where time is made of the essence.  In the absence of an express agreement otherwise, a debtor owes his creditor nothing less than the unconditional delivery of money on or before the last day specified for payment.  When commercial parties agree that the debtor shall pay the creditor on or before a specific date, time being of the essence, they mean exactly that. The debtor shall deliver money to the creditor on or before the due date. There is almost always no such thing as "substantial performance" of payment between commercial parties when the duty is simply the general one to pay. Payment is either made in the amount and on the due date, or it is not.

As the supreme court held, where waiver is sought to be established by conduct, the acts, conduct or circumstances relied upon to show waiver must make out a **clear case**.  Retention of the wired $800.00 did not constitute a waiver by Creditor of the right to seek the default remedy because: Paragraph (c) of the Settlement Agreement permitted Creditor to apply the late payment to reduce the default amount owed; there was no habitual or routine acceptance of late payments; Paragraph C entitled Creditor to the default amount without further notice, ex-parte, and without hearing;  the bankruptcy court found that Debtor was previously put on notice that future late payments would not be tolerated and on the next late payment Debtor was defaulted with a motion for default being filed the very next day; and Debtor never once mentioned (including in its own Objection to Creditor's Claim [R. 9-2 Pg. 4-7]) until the actual day of the evidentiary hearing that

it would be contending that Creditor's retention of the payment constituted a waiver of the right to the default remedy.

Lastly, the law does not require a futile act, and it would have been futile to have Creditor return the late $800 payment even though it is undeniably due, with the only question being what is the <u>balance</u> owed i.e. should it be applied to reduce: (1) $40,000.00 debt under the Settlement Agreement as Debtor alleges or (2) the $72,006.05 default amount as Creditor alleges.

<u>ARGUMENT</u>

**II.** **CREDITOR IS ENTITLED TO ITS DEFAULT REMEDY PURSUANT TO PARAGRAPH (C) OF THE SETTLEMENT AGREEMENT [R. 9-3 Pg. 4] IN STRICT ACCORDANCE WITH THE PLAIN, CONSPICUOUS, AND UNAMBIGUOUS SETTLEMENT TERMS WHICH MADE "*TIME [FOR PAYMENT] ABSOLUTELY AND STRICTLY OF THE ESSENCE,*" AND CREDITOR'S RECEIPT OF DEBTOR'S LATE OCTOBER PAYMENT BY WIRE, WITHOUT DEBTOR MAKING ANY MENTION THAT RETENTION WOULD CONSTITUTE A WAIVER OF DEBTOR'S DEFAULT UNTIL THE DAY OF THE EVIDENTIARY HEARING, DOES NOT EVINCE THE REQUISITE FINDING OF A "CLEAR CASE" THAT CREDITOR INTENDED TO WAIVE ITS RIGHT TO THE DEFAULT REMEDY; ESPECIALLY IN LIGHT OF THE BANKRUPTCY COURT'S FINDING THAT DEBTOR RECEIVED ONE PRIOR "ACCOMMODATION [FROM CREDITOR] BUT WARNED THAT FUTURE LATE PAYMENTS WOULD NOT BE TOLERATED." [R. 9-4 Pg. 112]**

Under Florida law, failure to make a payment on time does not constitute *per se* a material breach of contract. <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1151 (11th Cir. 2005). Rather, to constitute a material breach, the late payment must occur where time is of the essence. <u>Id</u>. *citing*, <u>Sublime, Inc. v. Boardman's Inc.</u>, 849 So.2d 470, 471 (Fla. 4th DCA 2003). Time is of the essence under Florida law when (1) the agreement explicitly so specifies; or (2) such may be determined from the subject matter of the contract; or (3) treating time as non-essential would produce a hardship; or (4) notice has been given to the defaulting party requesting performance within a reasonable time. <u>Id</u>.

In this case, Creditor is entitled to strict enforcement of the Settlement Agreement in accordance with its terms.  Time was expressly made of the essence. The word "*time*" was repeated five times (5x) times within the two (2) page Settlement Agreement stressing time's essence and materiality to this Settlement Agreement as the Debtor agreed that:

(1) "Each payment shall be *timely* delivered on or before the 15th of every month . . . ;"
(2) "All payments hereunder, unequivocally must be *timely* delivered . . .; "
(3) "***TIME IS ABSOLUTELY AND STRICTLY OF THE ESSENCE***;"
(4) "It is Defendants' joint responsibility to insure that payment is *timely* delivered;"
(5) "Defendants assume the risk of payments not being *timely* delivered."
[R. 9-3 Pg. 4 ¶A, ¶B, ¶E].

Paragraph (A) of the Settlement Agreement set out when payments were due stating, "[Debtors] are jointly and severally responsible for paying a total of $40,000.00 payable to the order of [Creditor] in clear funds. Each payment shall be timely delivered on or before the 15th of every month in the amount $800.00 each month starting October 15, 2014." [R. 9-3 Pg. 4 ¶A]. Paragraph C of the Settlement Agreement provided Creditor with a "specific remedy" if payments were not timely paid stating:

"[Debtors'] failure to comply with Paragraph A or the failure of the payment funds clearing shall entitle [Creditor] to obtain a default judgment ex-parte, without hearing against [Debtors], for the full amount as provided in the Complaint, which is $72,006.05 which continues to accrue interest at 18% per annum from May 5, 2014 plus attorneys' fees . . . which will be subject to reduction as reflected by any payments or partial payments made by [Debtors]."  [R. 9-3 Pg. 4 ¶C].

As the bankruptcy court held, the Settlement Agreement's terms were conspicuous and unambiguous.  The Settlement Agreement even underlined the default amount, warning that default would result in Creditor being entitled to what it sued for in the Complaint of "$72,006.05 which continues to accrue interest at 18% per annum." *See generally*, In re Jones, 06-80150-JAC-13, 2007 WL 1725593, at *6 (Bankr. N.D. Ala. 2007) *subsequently aff'd*, 279 Fed. Appx. 825 (11th Cir. 2008) (terms were "clear and conspicuous where the addendum labeled its provisions and

capitalized certain terms to draw the reader's attention to material portions of the agreement."); Royal Caribbean Cruises, Ltd. v. Clarke, 148 So. 3d 155, 157 (Fla. 3d DCA 2014)("The record sufficiently established that Clarke entered into the ticket contract and the first paragraph of the ticket contract reasonably communicated to Clarke, in bold and capital letters, important limitations such as the forum selection clause and the one-year limitation to file suit.")

"Courts, without dispute, are not authorized to rewrite clear and unambiguous [settlement] contracts." Andersen Windows, Inc. v. Hochberg, 997 So. 2d 1212, 1213 (Fla. 3rd DCA 2008) (trial court's order constituted an unauthorized rewriting of settlement agreement).  "And where a contract is clear and unambiguous, it must be enforced as written." Id. citing Gomes v. Boatarama, Inc., 963 So. 2d 869, 869 (Fla. 3rd DCA 2007) (reversing where trial court deviated from express terms of parties' settlement agreement); BAC Int'l Credit Corp. v. Macia, 626 So. 2d 1037, 1038 (Fla. 3rd DCA 1993) (concluding that a "settlement should be enforced in accordance with its terms").

A default remedy clause in a settlement agreement "confers a contract right upon the [creditor] which he or she may elect to enforce upon default." See, LRB Holding Corp. v. Bank of Am., N.A., 944 So. 2d 1113, 1114 (Fla. 3rd DCA 2006).  A creditor to a settlement agreement is entitled to strict enforcement where "time is made of the essence" by specifying that payment is due on or before a specific date. Hufcor/Gulfstream, Inc. v. Homestead Concrete & Drainage, Inc., 831 So. 2d 767, 769 (Fla. 4th DCA 2002).

In Hufcor, a creditor entered into a similar settlement agreement to the case at bar, in which the parties agreed to forego collection of the entire $86,000 due on a construction contract, and instead accept $75,000 payable in installments, so long as "payments were made pursuant to an agreed schedule." Id. The debtor defaulted by submitting its payment eighteen (18) days after

notice of late payment was sent by the creditor. Id.  Florida's appellate court ruled in favor of the creditor, allowing them to enforce their default remedy less payments made; holding that "[w]here the debtor agrees to pay the creditor on or before a specific date, *time is of the essence*, and the debtor is required to deliver money to the creditor on or before that date." Id.  "Payment is either made in the amount and on the date due, or it is not." Id.

Constrained, the court in Hufcor recognized "that the result seems harsh" as the final payment was made, although late. Id. at 767. However, the court went on to note that the creditor was entitled to strict enforcement where they "agreed to forbear its pending action so long as [the debtor] made the payments in accordance with the parties' bargained-for agreement." Id. at 769–70.

In this case, the $72,000+ debt which Creditor reduced to $40,000.00 did not accrue for Debtor overnight.  There is nothing harsh about a debtor receiving a substantial discount of a long over-due debt, which Creditor had to sue debtor for, and then enter into a Settlement Agreement prolonging the payment terms out over an even lengthier 50 month period, and even then obtaining from creditor further default notices prior to having to actually make the payment before going into default.  Regardless, "[i]t is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain." Barakat v. Broward County Hous. Auth., 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000).  "A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain." Id.

Default is defined as the "failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." DEFAULT Black's Law Dictionary (10th ed. 2014).  Debtor defaulted in October for his failure to pay the debt *when* due and *on time*, not because of the absence or want

of payment.  Just like arriving at the airport seconds after your plane has already departed, "[a]n attempted performance in the form of a late payment does not cure the default where time is made of the essence." Hufcor, 831 So. 2d at 769.

Oddly, the bankruptcy court's two (2) orders were based upon a misapplication of Treasure Coast, Inc. v. Ludlum Construction Co., 760 So.2d 232 (Fla. 4th DCA 2000), which oddly, is a case Appellant/Creditor argued favors Creditor, and further warrants reversal of the bankruptcy court's decision.

In Treasure Coast, Inc. v. Ludlum Construction Co., seven (7) days after the contractual ten (10) day grace period expired, the debtor paid its monthly settlement payment late (on 08/17/99), the creditor retained the payment and moved to enforce the settlement two (2) days later (on 08/19/99), the debtor *thereafter* filed a written objection alleging creditor's acceptance of the late payment constituted a waiver of the right to claim default (on 08/24/99), and upon receipt of the debtor's written objection claiming waiver, that same day the creditor returned the check (08/24/99).  760 So. 2d 232, 34 (Fla. 4th DCA 2001).   No such similar notice alleging waiver was ever provided to the Creditor/Appellant.  Moreover, at the time the debtor in Treasure Coast, made his late payment, the debtor still had five (5) more installments due.  The Court held that,

> By agreement, the parties provided no other provision for curing the default [other than payment within the ten (10) day grace period].  In the absence of an express agreement otherwise, a debtor owes his creditor nothing less than the unconditional delivery of money on or before the last day specified for payment.  We reject appellee's argument that appellant waived its right to seek final judgment because it held onto the check for approximately one week after moving to enforce the settlement agreement. When commercial parties agree that the debtor shall pay the creditor on or before a specific date, time being of the essence, they mean exactly that. The debtor shall deliver money to the creditor on or before the due date. There is almost always no such thing as "substantial performance" of payment between commercial parties when the duty is simply the general one to pay. Payment is either made in the amount and on the due date, or it is not. Although the agreement in this case did not contain a "time is of the essence" clause, the terms in this

agreement clearly contained the express provision for payment of a sum certain on a specific date. In providing appellant with a specific remedy, judgment for the entire amount due and owing in the event of nonpayment, the parties essentially agreed that time was of the essence. Accordingly, since payment was in fact made after the grace period, we reverse and remand with directions that judgment be entered in favor of appellant.

760 So. 2d 232, 234-35 (Fla. 4th DCA 2000) *(internal citations omitted)*

The court was quite explicit in its holding in stating: "We reject appellee's argument that appellant waived its right to seek final judgment *because it held onto the check* for approximately one (1) week after moving to enforce the settlement agreement. Id. (emphasis added). Furthermore, a careful look at the court's holding reveals that the court did not rule in favor of the creditor because it returned the payment, rather, it ruled in favor of the creditor because time was of the essence and payment was made late, stating: "Accordingly, since payment was in fact made *after the grace period*, we reverse and remand with directions that judgment be entered in favor of appellant. Id. at 235.  Moreover, any reference in Treasure Coast, to the plaintiff retaining a settlement payment and then returning the settlement payment had nothing to do with the appellate court's holding, and was mere dicta to that holding.  *See e.g.* United States v. Eggersdorf, 126 F.3d 1318, 1322 n. 4 (11th Cir.1997) ("[L]anguage in ... [an opinion] not necessary to deciding the case then before us" is dicta).

Notwithstanding, in the case *subjudice*, it was the Debtor who wired his $800.00 payment directly into Creditor's account on October 22, 2015 knowing full well that the payment was late, never conditioned acceptance of the late payment upon the default being waived if not returned, and only claimed waiver for the first time at the evidentiary hearing. Thus, Creditor is entitled to strict enforcement of the Settlement Agreement where time was not only absolutely and explicitly made of the essence, provided for payment of a sum certain on or before a specific date, and further provided Creditor with a specific default remedy in the event payment was not timely paid.

As to the question of whether Creditor's retaining the payment constituted a waiver, Florida's Supreme Court "defined 'waiver' as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right."  Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla. 2005). However, *"[w]*here waiver is sought to be established by conduct, the acts, conduct or circumstances relied upon to show waiver must make out a **clear case**."  E.g. In re Gande Rests., Inc., 162 B.R. 345 (Bankr. M.D. Fla. 1993), *citing,* Gilman v. Butzloff, 22 So.2d 263, 265 (1945).

Considering the complete absence of testimony from the Debtor in this case, it is hard to imagine how a clear case of waiver could have been established.  Particularly in this case, where Debtor paid late, the next day Creditor filed a motion to enforce the settlement for the full default amount, 12 days later Debtor filed for bankruptcy protection from Creditor, Debtor never conditioned Creditor's acceptance of payment upon a waiver of Debtor's default, and Debtor never requeted the payment be returned.  *Cf. generally,*  Fla. Stat. §673.3111 (entitled Accord and satisfaction by use of instrument, requiring claimant to provide conspicuous notice *prior* to tender).

A creditor is said to have waived its right to declare the debtor in default when the creditor habitually accepts late payments. Walker v. Ford Motor Credit Co., 484 So. 2d 61, 62–63 (Fla. 1st DCA 1986).  Waiver does not arise from forbearance for a reasonable time. Gilman v. Butzloff, 22 So. 2d 263, 265 (Fla. 1945).

In Kelly Tractor Co. v. R.J. Canfield Contracting, Inc. the court held that accepting two (2) late payments on a twelve (12) month lease did not constitute a creditor's waiver of its default remedy.

> "The record also fails to show a sufficient pattern of acceptance of late payments and forbearance by Kelly Tractor in the exercise of its rights under the lease to support appellees' defense of estoppel. Here, Kelly Tractor accepted only two late payments on a twelve-month lease. Thereafter, the record is undisputed that Kelly

> Tractor contacted appellees and notified them that they were in arrears on their March and April payments. Under these facts, we hold that the trial court erred when it found that Kelly Tractor had not acted in good faith in exercising its rights to replevy the tractor without notice."
>
> 579 So.2d 261, 264 (Fla. 4th DCA 1991), *review denied* 591 So.2d 183 (Fla.1991).

If anything, the facts at bar "make out a clear case" that Creditor never waived its right to strict enforcement of the Settlement Agreement. *See* Gilman, 22 So.2d at 265. The Settlement Agreement provides that: "If payment is not received by the 15th of the month, [Creditor] shall provide notice of default…." [R. 9-3 Pg. 4 ¶ B]. Of the thirteen (13) installment payments actually made by Debtors, five (5) were sent late, requiring Creditor to go through the trouble of providing Debtors with a default notice. [R. 9-4 Pg. 88-89, R. 9-3 Pg. 22-61]. With the exception of the last October 15, 2015 payment, Debtor paid within the five (5) day grace period, and in accordance with the terms of the Settlement Agreement. [R. 9-4 Pg. 88-89]. The bankruptcy court found that, "Creditor in response to Debtor's request to pay the February payment late, stated it was making the accommodation but warned that future late payments would not be tolerated [and] in October 2015, Debtor did not request or receive permission to make the October payment late." [R. 9-4 112]. Based upon the facts of the instant case, Creditor's actions do not set out a "clear case" that Creditor had actual or constructive knowledge of the right to waive its default remedy and an intention to waive and relinquish that right.

Moreover, the return of Debtors' late payment is antithetical to what the Settlement Agreement provided. Paragraph C only permitted Debtor to receive a credit towards the balance owed, not a refund, stating:

> DEFENDANTS failure to comply with Paragraph A or the failure of the payment funds clearing **shall entitle PLAINTIFF to obtain a default judgment ex-parte, without hearing** against DEFENDANTS, for the full amount as provided in the Complaint, which is $72,006.05 which continues to accrue interest at 18% per annum from May 5, 2014 plus attorneys' fees pursuant to the Contract (attached to

the Complaint) **which will be subject to reduction as reflected by any payments or partial payments made by DEFENDANTS.**

Additionally, Paragraph C allows Creditor to obtain its default without notice, ex-parte, and without hearing.  Although Creditor is not a bank, in LRB Holding Corp. v. Bank of Am., N.A., a borrower submitted 39 out of 84 payments late before the lender sent out its notice of intent to accelerate. 944 So. 2d 1113 (Fla. 3rd DCA 2006).  The last payment sent was also paid late and retained by the lender.  The appellate court held in favor of the lender where the note "declared that the borrower would be in default for failure to make the payment on time," and "that upon default, the lender may [accelerate the loan] without notice." Id. In rejecting the borrower's waiver argument, the court noted that "[i]t was [the borrower's] repeated failure to make timely payments that led to the [lender's] decision to accelerate the note." Id.

In Gus' Baths v. Lightbown, the court held that "It is a general rule that the fact that a mortgage is not foreclosed on the first default in payment does not prevent a foreclosure for a subsequent default, since such indulgence cannot affect a right not yet accrued." 133 So. 85, 87 (Fla. 1931).  Furthermore the court stated that, 'Upon the question as to the effect of a delay in declaring a mortgage due under an acceleration clause, in a sumber of jurisdictions, the courts have in effect rejected the so-called 'reasonable notice' or 'reasonable time' rules, and have adopted an even broader one, holding that mere delay does not constitute a waiver, and that the option exists so long as the default continues, provided only that in the meantime the mortgagee shall not have gained any advantage or the mortgagor have suffered any detriment or loss.'

With regards to returning the October late payment only to have to reclaim it later, "it is well settled that the law does not require a useless or futile act." E.g. State v. Thomas Davis, 834 So.2d 898, FN. 1 (Fla. 3rd DCA 2002).

It would be futile to have Creditor return the late $800 payment even though it is undeniably due, with the only question being what is the <u>balance</u> owed?  In other words, the question was never whether the $800.00 should be paid, because of course the answer was yes.  The question was simply does it reduce: (1) $40,000.00 debt under the Settlement Agreement as Debtor alleges or (2) the $72,006.05 default amount as Creditor alleges.  Under either scenario, Debtor's $800.00 was undeniably owed, and since Debtor had only made thirteen (13) of the fifty (50) installment payments, even under Debtor's scenario the $800.00 was still owed.  Accordingly, even if there were a requirement to return the $800.00, for which the Settlement Agreement makes no requirement, it would have been futile for Creditor to do so since the $800.00 would have to be returned to Creditor anyway.

The bankruptcy court's reliance on the insurance case of <u>Mixson v. Allstate Ins., Co.</u>, 388 So. 2d 608 (Fla. 3rd DCA 1980) was incorrect.  Unlike an insurance case, retention of a past due payment is not a waiver of Creditor's right to pursue its default remedy, because Creditor is not conferring a future benefit on Debtors in consideration of payment, rather Creditor is recovering for a past benefit which it already conferred upon Debtor. "An insurer cannot retain a past-due premium and at the same time claim that a forfeiture of the policy has occurred." <u>Id.</u> at 609. In <u>Mixson,</u> the insured's policy lapsed on March 31, 1977, the insured sent its late payment fifteen (15) days later by check, and the insurer received and cashed the check ten (10) days later on April 25, 1977.  After the insured got into an accident, the insurer denied coverage, and the insured filed suit. <u>Id.</u>  The appellate court held that the insurer, who never refunded the April check paying for the insurance policy, could not unconditionally retain the benefit of the payment, and at the same time deny coverage for an accident which occurred on April 21, 1977. <u>Id.</u> at 609 ("Allstate did not however make any attempt to refund the April payment.")

A party to a contract is not required to confer a benefit on the other party absent consideration. See Progressive Exp. Ins. Co. v. Camillo, 80 So. 3d 394, 400 (Fla. 4th DCA 2012). Similarly, an insurance company is not required to confer the benefit of coverage on an insured, when the insured fails to provide the insurer with consideration in the form of a premium payment. *See* Id.  In contrast to Mixson, in Progressive Exp. Ins. Co. v. Camillo, Florida's Fourth District Court of Appeal held that that an insurer could deny coverage for a loss "[w]here a policy expires without the insured making a renewal payment, and a loss occurs after the expiration of the policy period." Id. The court held that waiver does not occur in this instance because "the insurer is not retaining any premiums for the lapsed period." Id. at 401; see also Travelers Indemnity Co. v. Mirlenbrink, 345 So.2d 417 (Fla. 2nd DCA 1977) (holding in favor of the insurer where the insured did not pay its renewal premium for months, waiting until nine days after being in an accident, and the insurer did not return the premium but instead reinstated the policy effective the day after loss).

"*In the insurance context*, Florida courts look to whether an insurer's acceptance of a late payment was unconditional, which would constitute waiver, or whether the acceptance was conditioned on the performance of something else by the insured or the insurer, which would not constitute waiver." E.g. Bristol W. Ins. Co. v. Albertson, 41 So. 3d 378, 381 (Fla. 4th DCA 2010), *citing* Pajcic v. Am. Gen. Life Ins. Co., 419 F.Supp.2d 1380, 1382 (M.D.Fla.2006), *comparing,* Mixson v. Allstate Ins. Co., 388 So.2d 608, 609 (Fla. 3rd DCA 1980) (unconditional acceptance of past-due premium waived insurer's right to contend policy lapsed) *and* Meeks v. State Farm Mut. Auto. Ins. Co., 460 F.2d 776, 778 n. 3 (5th Cir.1972) (unconditional acceptance and retention of delinquent premium is waiver of right to cancel policy or to refuse reinstatement) *with* WJA Realty Ltd. P'ship v. Employee Benefit Claims, Inc., 488 So.2d 121, 122 (Fla. 3rd DCA 1986) (acceptance of past-due premium was not unconditional when insurer returned premium to insured) and

<u>Travelers Indem. Co. of R.I. v. Mirlenbrink</u>, 345 So.2d 417, 419 (Fla. 2nd DCA 1977) (insurer was not estopped from denying coverage by temporarily accepting late payment when insured had not properly renewed policy). "In other words, while an insurer cannot permanently retain the benefits of a late premium payment and still deny coverage to the insured, the temporary acceptance of a payment conditioned on the insured taking steps to perfect the policy does not necessarily constitute the knowing and voluntary abandonment of the insurer's right to claim the policy's coverage has terminated." <u>Pajcic</u>, 419 F. Supp. 2d at 1383.

In its second order [R. 9-4 Pg. 113], the bankruptcy court incorrectly attributed the concept of "unconditional acceptance of payment" to the cases of <u>Sublime, Inc. v. Boardman's Inc</u>. and <u>Treasure Coast, Inc.,</u> which actually deal with creditors to settlement agreements, when it stated: "the Court believes the unconditional acceptance and retention of the payment prior to accelerating the debt is a waiver by the Creditor of its rights to move forward with acceleration." [R. 9-4 Pg. 113]. Although in its first order the bankruptcy court correctly attributed this concept as relating to the insurance context by stating: "An insurer cannot retain a past-due premium and at the same time claim that a forfeiture of the policy has occurred. *See*, <u>Mixson v. Allstate Ins. Co.,</u> 388 So. 2d 608, 609 (Fla. 3rd DCA 1980)(the unconditional acceptance of payment constituted a waiver of the insurer's right to contend the policy had lapsed.)" [R. 9-4 Pg. 94].  The question of *conditional acceptance* vs. *unconditional acceptance* only pertains to the insurance context. Unlike an insurance case where continuing a policy would be *conditioned* on acts such as filing paper work; here, there is no condition which Creditor can place on Debtor's performance.  Debtor's only duty to Creditor is timely payment: "payment is either made in the amount and on the date due, or it is not." <u>Hufcor,</u> 831 So. 2d at 769.

Lastly, the bankruptcy court also incorrectly interpreted the landlord-tenant case of Sublime, Inc. v. Boardman's Inc., 849 So.2d 470 (Fla. 4th DCA 2003) as requiring late settlement payments to be returned in order to invoke a default remedy.  In Sublime, the landlord sought to enforce the default remedy of $36,865.05 in lieu of the remaining $4,915.35 due under the settlement agreement.  There was no time is of the essence clause, the second to last payment was sent thirteen (13) days after the grace period, and the landlord rejected the check.  In reversing the trial court's refusal to award the default amount the appellate court held that,

> "Here, although there was no provision expressly stating that time was of the essence, any delay in payment was sheltered by a built in five (5) day grace period and the agreement clearly specified that upon default, the stated amount would be 'immediately' due and payable. This was sufficient to put Boardman's on notice that failure to pay at the allotted time would result in a default and trigger the acceleration provision.

Sublime, Inc. v. Boardman's Inc., 849 So.2d 470, 471 (Fla. 4th DCA 2003).

Nothing in Sublime nor Treasure Coast's holdings required the return of a late payment prior to enforcing a default remedy.  Unfortunately in both Treasure Coast and Sublime the appellate briefs were purged by the Fourth DCA, so it is unknown what prompted the return of the payment in Sublime, other than the fact that the undersigned contacted the appellate counsel, Mr. Wayne Kaplan, Esq. who advised that he still represents Sublime, Inc. as a shopping center, and as landlord-tenant lawyer, he counsels his landlords not to retain late payments due to the special nature of landlord-tenant cases.  Understandably so, since Florida's Legislature enacted Florida Statute §83.202 entitled Waiver of right to proceed with eviction claim, which states, "The landlord's acceptance of the full amount of rent past due, with knowledge of the tenant's breach of the lease by nonpayment, shall be considered a waiver of the landlord's right to proceed with an eviction claim for nonpayment of that rent. Acceptance of the rent includes conduct by the

landlord concerning any tender of the rent by the tenant which is inconsistent with reasonably prompt return of the payment to the tenant."

## <u>CONCLUSION</u>

For the foregoing reasons, Creditor requests the "Order Sustaining Debtor's Objection To Claim [1-2]" ("Order 1") [R. 9-4 Pg. 87-95] entered on April 29, 2016, and the "Order Granting In Part Motion For Reconsideration To Alter And Correct Order Sustaining Objection To Claim [1-2]" ("Order 2") [R. 9-4 Pg. 111-114] entered on September 20, 2016 be reversed, and remanded for the bankruptcy court to enter an order entitling Creditor to its default remedy under Paragraph C of the Settlement Agreement of $72,006.05 default amount, less $10,400.00 in payments made by the debtor, plus 18.00% interest since May 5, 2014, plus attorney fees [R. 9-8, R. 9-2 Pg. 8-68].

## CERTIFICATE OF COMPLIANCE

I hereby certify that the font of this computer-generated brief is Times New Roman 12 point, the principal Brief is 26 pages, the word count is 8,864, the lines including footnotes is 736.

**/S/RANDALL GILBERT**
RANDALL L. GILBERT
Florida Bar. No. 0173835

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served via e-mail through CM/ECF this **December 12, 2016** to all counsel or parties of record on the attached service list.

**/S/RANDALL GILBERT**
RANDALL L. GILBERT
Florida Bar. No. 0173835
**RGilbert@theconstructionlawyers.com**
GILBERT LAW GROUP, P.A.
1720 Harrison St.,
19th Floor - Penthouse B
Hollywood, Florida 33020
Office: (954) 620-5000
Fax: (954) 620-5105
Attorneys for: **Appellant/Creditor GILBERT & CADDY, P.A. n/k/a GILBERT LAW GROUP, P.A.**

## SERVICE LIST

**SENT VIA CM/ECF**
- **Marc G. Granger, Esq.  mgranger@kahaneandassociates.com;**
- **Richard R Robles, Esq rrobles@roblespa.com**
- **Office of the US Trustee   USTPRegion21.MM.ECF@usdoj.gov**
- **Trustee Nancy K. Neidich   e2c8f01@ch13herkert.com**

**SENT VIA U.S. MAIL AND VIA EMAIL**
- **Jennifer Cabrera** 20533 Biscayne Blvd #750, Aventura, FL 33180 jennifer.cabrera@planetbeach.com